**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**AMELIA JOYCE INC.,**<br>**WILLIAM E. MULLIS, and**<br>**DEAN STRICKLER,**<br><br>**Defendants.** | **Civil Action No.** |

**COMPLAINT**

Plaintiff, the United States of America, acting at the request of the United States Coast Guard ("Coast Guard"), files this Complaint and alleges the following:

**NATURE OF THE ACTION**

1. This is a civil action brought by the United States against Amelia Joyce Inc., William E. Mullis, and Dean Strickler (collectively, "Defendants"), seeking civil penalties and injunctive relief for multiple violations of Section 311 of the Clean Water Act ("CWA" or the "Act"), 33 U.S.C. § 1321, and its implementing regulations. The Complaint addresses (a) Defendants' intentional discharges of oily bilge waste from the commercial fishing vessel *Amelia Joyce* into the Acushnet River near, or in, Fairhaven Harbor, and into Buzzards Bay and/or other ocean waters off the coast of Massachusetts, and (b) Defendants' related violations of the Coast Guard's pollution control regulations.

**JURISDICTION, AUTHORITY, AND VENUE**

2. This Court has jurisdiction over this matter under Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), and (n), and 28 U.S.C. §§ 1331, 1345, and 1355.

3. Authority to bring this action is vested in the United States Department of Justice by 28 U.S.C. §§ 516 and 519.

4. Venue is proper in this District under Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), and (n), and 28 U.S.C. §§ 1391 and 1395(a), because the claims arose in this District and Defendants do business in this District.

**DEFENDANTS**

5. Defendant Amelia Joyce Inc. is incorporated in Virginia with its business address in Seaford, Virginia. At all relevant times hereto, the company owned the U.S.-flagged *Amelia Joyce* (Official Number: 919973). The *Amelia Joyce* is a commercial fishing vessel with a home port (a/k/a hailing port) at all relevant times hereto of Fairhaven, Massachusetts. The vessel is approximately 160 gross tons.

6. Defendant William E. Mullis is the President of Amelia Joyce Inc. Mr. Mullis controls and directs the operations of Amelia Joyce Inc. He also is an operator and person in charge of the *Amelia Joyce* vessel and was an operator and a person in charge of the *Amelia Joyce* vessel at the time of the violations alleged in this Complaint. He has a business address in Seaford, Virginia.

7. Defendant Dean Strickler, at the time of the violations alleged in the Complaint, was also an operator and person in charge of the *Amelia Joyce* vessel and was the “Captain” of the vessel. He resides in Virginia Beach, Virginia.

**FACTS**

8. At all relevant times hereto, Amelia Joyce Inc. owned the commercial fishing vessel named the *Amelia Joyce*.

9. At all relevant times hereto, Defendants Amelia Joyce Inc., William E. Mullis,

and Dean Strickler were the owners, operators, and/or persons in charge of the *Amelia Joyce*. For example, Amelia Joyce Inc. owned the vessel. William E. Mullis and Dean Strickler managed and were in charge of the operations of the *Amelia Joyce*, including handling and disposal of wastes, maintaining the vessel, purchasing equipment for the vessel, and/or managing the crew.

10. At all relevant times hereto, Defendants knew, or should have known, that the *Amelia Joyce* lacked the equipment and capacity to retain on board all of the oily mixtures, as described below, generated while underway, and that the *Amelia Joyce* regularly discharged oily waste overboard into the ocean and/or tributary waters off the coast of Massachusetts, in violation of the requirements of the CWA.

11. At all relevant times hereto, Defendants nonetheless continued to operate the *Amelia Joyce* without adequate capacity to retain all of its oily mixtures on board and continued to intentionally discharge oily mixtures overboard, in violation of the requirements of the CWA, including its governing pollution control regulations.

12. At all relevant times hereto, Defendants had responsibility and authority to prevent or promptly correct the violations alleged in this Complaint but failed to take timely action to correct the violations.

13. At all relevant times hereto, the *Amelia Joyce* did not have an oil-water separating system on board and it lacked the capacity to store the quantity of oily mixtures generated on its fishing voyages.

14. At all relevant times hereto, the *Amelia Joyce* was equipped with a diesel fuel engine.

15. At all relevant times hereto, the *Amelia Joyce* was equipped with two oil tanks, a diesel fuel oil tank with a capacity of 8,000 gallons and a lube oil tank with a capacity of 200 gallons.

16. At all relevant times hereto, oil routinely leaked from machinery into the *Amelia Joyce*'s engine room bilge, and water and other waste fluids that entered the engine room bilge commingled with oil to form an oily mixture.

17. At all relevant times hereto, rather than properly treat or store the engine room's oily bilge waste onboard the *Amelia Joyce*, Defendants intentionally pumped oily mixtures out of the engine room bilge into the ocean or tributary waters off the coast of the United States, including (a) the Acushnet River near, or in, Fairhaven Harbor, and (b) Buzzards Bay and other ocean waters off the coast of Massachusetts. This was the oily bilge waste disposal practice for the *Amelia Joyce* including during its fishing voyage from July 5 through July 11, 2019 (the "Voyage"), as well as on July 14, 2019.

18. Defendants used an electric water pump aboard the *Amelia Joyce* to illegally discharge oily waste from the vessel's engine room bilge into navigable waters of the United States (which include the Acushnet River and the United States' territorial sea), the contiguous zone, and/or the United States' exclusive economic zone. Defendants discharged the oily waste into these waters multiple times during the Voyage and on July 14, 2019, while in or near port. Defendants may also have discharged oily wastes on July 12, 2019, and/or July 13, 2019, and/or on other voyages since July 14, 2019.

19. Defendants' overboard discharges of oily bilge waste enabled Defendants to avoid the cost of proper waste management and disposal and allowed Defendants to remain at sea longer to increase their catch.

20. From July 5 through July 11, 2019, Defendants conducted the fishing Voyage, during which the *Amelia Joyce* traveled from the Fairhaven Shipyard, in Massachusetts, down the Acushnet River, across Buzzards Bay, through the Vineyard Sound, past Martha's Vineyard and Nantucket Island, into the Atlantic Ocean, and then back along approximately the same route.

21. Defendants discharged oily wastewater from the *Amelia Joyce* into waters along this route on multiple occasions during the Voyage.

22. At some time between July 11, 2019, and July 14, 2019, as Defendants returned to Fairhaven Shipyard, the *Amelia Joyce*'s crew, as part of the process of preparing the vessel for maintenance on its freshwater tank, transferred the water from such tank into the engine room bilge, and then discharged oily water from the bilge into Buzzards Bay, and/or the Acushnet River near, or in, Fairhaven Harbor.

23. On July 14, 2019, the *Amelia Joyce* discharged liquid mixed with soap and oil from the vessel's engine bilge into the Acushnet River near, or in, Fairhaven Harbor. Timothy Cox, the Town of Fairhaven Harbormaster (the "Harbormaster") observed this discharge.

24. On July 14, 2019, the Harbormaster notified the National Response Center, the Coast Guard, and the Massachusetts Department of Environmental Protection ("MassDEP") of the discharge from the *Amelia Joyce* that he had observed that day.

25. On July 15, 2019, representatives of the Coast Guard and MassDEP, accompanied by the Harbormaster, conducted an investigation on board the *Amelia Joyce*.

26. During the July 15, 2019 investigation of the *Amelia Joyce*, Coast Guard personnel inspected the machinery space and bilge, and took photographs of the vessel. As observed by these Coast Guard personnel, the *Amelia Joyce* had a hose assembly connected to

the port side of the vessel, installed to transfer oily waste directly overboard via a common manifold in the machinery space.

27. When questioned about the vessel's oily waste disposal practices, Defendant Dean Strickler, the vessel's captain, admitted that the *Amelia Joyce* routinely disposed of liquid from the engine bilge via intentional overboard discharges while underway in the exclusive economic zone of the United States and admitted that the vessel did so on multiple days of the Voyage and separately on July 14, 2019.

28. During the July 15, 2019 investigation, Coast Guard personnel also collected samples from the *Amelia Joyce*'s bilge and from the overboard discharge valve. The Coast Guard sent these samples to its Marine Safety Lab, in New London, Connecticut, to conduct a chemical analysis. The results of the Marine Safety Lab analysis revealed that samples collected from both the vessel's bilge and the overboard discharge valve contained oil.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Civil Penalties for Violations of the CWA Section 311(b)(3), 33 U.S.C. § 1321(b)(3) – Discharges of Oil

29. The preceding paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

30. Section 311(b)(3) of the CWA prohibits the discharge of oil "into or upon," *inter alia*, "the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone … or which may affect natural resources belonging to, appertaining to, or under the exclusive management authority of the United States (including resources under the Magnuson-Stevens Fishery Conservation and Management Act) in such quantities as may be harmful …" 33 U.S.C. § 1321(b)(3).

31. Congress directed the President to determine by regulation "those quantities of oil and any hazardous substance the discharge of which may be harmful to public health or welfare or the environment of the United States." 33 U.S.C. § 1321(b)(4). Under CWA Sections 311(b)(3) and (4), the President delegated to the Administrator of the Environmental Protection Agency ("EPA") the authority to determine quantities of oil the discharge of which may be harmful to the public health or welfare or the environment of the United States. 33 U.S.C. § 1321(b)(3) and (4); Exec. Order No. 12777, Section 8(a), 56 Fed. Reg. 54757, 54768 (1991). For purposes of CWA Section 311(b)(4), 33 U.S.C. § 1321(b)(4), as determined by EPA regulation, discharges of oil in such quantities that may be harmful to the public health or welfare or the environment of the United States include discharges of oil that "violate applicable water quality standards, or cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines, or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines." 40 C.F.R. § 110.3. Any addition of dispersants or emulsifiers to oil to be discharged that would circumvent the regulations are prohibited. 40 C.F.R. § 110.4.

32. Under Section 311(b)(7)(A) of the CWA, "[a]ny person who is the owner, operator, or person in charge of any vessel … from which oil … is discharged in violation of paragraph (3), shall be subject to a civil penalty …" 33 U.S.C. § 1321(b)(7)(A).

33. Civil penalties shall be increased under Section 311(b)(7)(D) of the CWA if the violation results from "gross negligence or willful misconduct." 33 U.S.C. § 1321(b)(7)(D).

34. Each Defendant is a "person" within the meaning of Section 311(a)(7) of the CWA. 33 U.S.C. § 1321(a)(7).

35. Each Defendant is or was an owner, operator, or person in charge of the vessel from which oil was discharged within the meaning of CWA Section 311(a)(6), 33 U.S.C. § 1321(a)(6), and CWA Section 311(b), 33 U.S.C. § 1321(b).

36. The *Amelia Joyce* is a "vessel" within the meaning of CWA Section 311(a)(3), 33 U.S.C. § 1321(a)(3).

37. The release of oily wastewater from the *Amelia Joyce* on July 14, 2019, and each time the *Amelia Joyce* pumped oily wastewater overboard during the Voyage, constitute "discharges" of oil within the meaning of CWA Section 311(a)(2), 33 U.S.C. § 1321(a)(2). For purposes of Section 311(a)(2) of the CWA, "discharge" is defined to include "any spilling, leaking, *pumping*, pouring, emitting, emptying or dumping …" subject to certain exceptions not applicable here. 33 U.S.C. § 1321(a)(2) (emphasis added).

38. The discharges of oily wastewater by the *Amelia Joyce* during the Voyage and on July 14, 2019, contained "oil" within the meaning of CWA Section 311(a)(1), 33 U.S.C. § 1321(a)(1).

39. During the Voyage, Defendants discharged oil from the *Amelia Joyce* into (a) the Acushnet River near, or in, Fairhaven Harbor, and (b) Buzzards Bay off the coast of Massachusetts, other navigable waters of the United States, the contiguous zone, and/or the ocean offshore of southeastern New England within the United States' exclusive economic zone.

40. On July 14, 2019, Defendants discharged oil from the *Amelia Joyce* into the Acushnet River near, or in, Fairhaven Harbor.

41. Defendants discharged oil from the *Amelia Joyce* during the Voyage while fishing in and traveling through the habitat of numerous types of natural resources within the exclusive economic zone. The oil discharges may have affected natural resources, including water, fish,

marine mammals, sharks, birds, and biota, belonging to, appertaining to, or under the United States' exclusive management authority.

42. The oil discharges were in a quantity which "may be harmful" within the meaning of Section 311(b)(3) and (4) of the CWA, 33 U.S.C. § 1321(b)(3) and (4), and 40 C.F.R. § 110.3.

43. The oil discharges from the *Amelia Joyce* during the Voyage and on July 14, 2019, and any oil discharges on July 12, 2019, and/or July 13, 2019, and/or during subsequent voyages violated CWA Section 311(b)(3), 33 U.S.C. § 1321(b)(3).

44. The oil discharges from the *Amelia Joyce* during the Voyage and on July 14, 2019, and any oil discharges on July 12, 2019, and/or July 13, 2019, and/or during subsequent voyages were intentional and thereby resulted from Defendants' gross negligence or willful misconduct. Defendants knew, or should have known, discharging oily mixtures overboard was unlawful and knew, or should have known, the *Amelia Joyce* did not have any onboard reception equipment to capture the oil wastewater generated during the operation of the *Amelia Joyce* on planned fishing voyages. Instead of legally managing the waste stream and operating within the limits of the *Amelia Joyce*'s capacity, Defendants intentionally discharged oil from the vessel into navigable waters of the United States, contiguous zone, and/or exclusive economic zone while in port and at sea.

45. Under Section 311(b)(7)(A) and (D) of the CWA, 33 U.S.C. § 1321(b)(7)(A), (D), each Defendant is liable for civil penalties of up to $55,808 per day for each violation or up to $2,233 per barrel discharged, or if it is proven that the violations were the result of gross negligence or willful misconduct, a civil penalty minimum of $223,229 per day for each violation and up to $6,696 per barrel discharged. *See* 88 Fed. Reg. 2179 (Jan. 13, 2023) (listing inflation-adjusted penalty rates for violations occurring after November 2, 2015).

## SECOND CAUSE OF ACTION

**Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C) – Failure to Have Capacity to Retain Oily Mixtures Onboard**

46. The preceding paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

47. Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $55,808 per day for each violation under CWA Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C). *See* 88 Fed. Reg. 2179 (Jan. 13, 2023) (listing inflation-adjusted penalty rates for violations occurring after November 2, 2015).

48. The Coast Guard has promulgated pollution control regulations under the authority of CWA Section 311(j), 33 U.S.C. § 1321(j), including 33 C.F.R. § 155.350. Under 33 C.F.R. § 155.350, no person may operate an oceangoing vessel of less than 400 gross tons unless the vessel: "(1) [h]as the capacity to retain on board all oily mixtures and is equipped to discharge these oily mixtures to a reception facility; or (2) [h]as approved oily-water separating equipment …"

49. The *Amelia Joyce* is a vessel of less than 400 gross tons.

50. At all relevant times hereto, the *Amelia Joyce* has not had oily-water separating equipment on board.

51. At all relevant times hereto, Defendants operated the *Amelia Joyce* from July 5 through July 14, 2019, and may have operated the vessel during subsequent voyages, without the capacity to retain on board the oily mixtures generated by the vessel. Instead of properly retaining the oily waste on board, Defendants illegally discharged the oily waste overboard. Each

day of operation of the *Amelia Joyce* without the capacity to retain on board the oily mixtures generated by the vessel was a day of violation of 33 C.F.R. § 155.350.

52. Defendants are each liable for civil penalties of up to $55,808 per day for each violation of 33 C.F.R. § 155.350 under CWA Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C).

**THIRD CAUSE OF ACTION**

**Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C) – Failure to Comply with Pumping, Piping, and Discharge Requirements**

53. The preceding paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

54. Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $55,808 per day for each violation under CWA Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C). *See* 88 Fed. Reg. 1751 (Jan. 13, 2023) (listing inflation-adjusted penalty rates for violations occurring after November 2, 2015).

55. The Coast Guard has promulgated pollution control regulations under the authority of CWA Section 311(j), 33 U.S.C. § 1321(j), including 33 C.F.R. § 155.420. Under 33 C.F.R. § 155.420, no person may operate an oceangoing vessel that is fitted with main or auxiliary machinery spaces and is 100 gross tons or above but less than 400 gross tons that does not have approved oily-water separating equipment unless the vessel has all of the pumping and piping equipment specified in 33 C.F.R. § 155.420(a).

56. The *Amelia Joyce* is fitted with main or auxiliary equipment spaces and is greater than 100 gross tons but less than 400 gross tons and at all relevant times hereto has not had approved oily-water separating equipment.

57. At all relevant times hereto, the *Amelia Joyce* has not had one or more of the items of pumping and piping equipment specified in 33 C.F.R. § 155.420(a).

58. Defendants operated the *Amelia Joyce* from July 5 through July 14, 2019, and may have operated the Amelia Joyce during subsequent voyages, without one or more of the items of pumping and piping equipment specified in 33 C.F.R. § 155.420(a). Instead of properly operating with such equipment, Defendants illegally discharged oily waste overboard. Each day of operation of the *Amelia Joyce* without having all of the items of pumping and piping equipment required by 33 C.F.R. § 155.420(a) was a day of violation of 33 C.F.R. § 155.420.

59. Each Defendant is liable for civil penalties of up to $55,808 per day for each violation of 33 C.F.R. § 155.420 under CWA Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C).

**FOURTH CAUSE OF ACTION**

**Injunctive Relief under CWA Section 311(e), 33 U.S.C. § 1321(e)**

60. The preceding paragraphs of this Complaint are incorporated by reference as if set forth fully herein.

61. In addition to civil penalties for the violations identified above, the United States seeks injunctive relief to prevent future discharges of oil from any fishing vessel owned or operated by any of the Defendants, including the *Amelia Joyce*, and to redress violations of regulations promulgated under 33 U.S.C. § 1321(b)(7)(C) which threaten future discharges of oil. Section 311(e) of the CWA authorizes the United States, through the Attorney General, to seek such relief when there "may be an imminent and substantial threat to the public health or welfare of the United States … because of an actual or threatened discharge of oil or a hazardous substance from a vessel or facility in violation of subsection (b) [*i.e.*, CWA Section 311(b), 33 U.S.C. § 1321(b)]." 33 U.S.C. § 1321(e).

62. Section 311(e)(1)(A) of the CWA authorizes the United States, through the Attorney General, to secure "any relief from any person … as may be necessary to abate such endangerment." 33 U.S.C. § 1321(e)(1)(A). District courts have "jurisdiction to grant any relief under this subsection that the public interest and the equities of the case may require." 33 U.S.C. § 1321(e)(2).

63. Defendants' practices described in this Complaint pose an imminent and substantial threat to the public health or welfare of the United States, because of an actual or threatened discharge of oil from a vessel or facility, in violation of CWA Section 311(b), 33 U.S.C. § 1321(b). Such practices are likely to continue unless corrective measures are imposed by the Court.

**REQUEST FOR RELIEF**

WHEREFORE, the United States respectfully requests that this Court:

A. Order each Defendant to pay a civil penalty for the oil discharge violations of CWA Section 311(b)(3), 33 U.S.C. § 1321(b)(3), in the amount of up to $55,808 per day for each violation under CWA Section 311(b)(7)(A), 33 U.S.C. § 1321(b)(7)(A), or if it is proven that the violations are the result of gross negligence or willful misconduct, at least $223,229 per discharge under CWA Section 311(b)(7)(D), 33 U.S.C. § 1321(b)(7)(D);

B. Order each Defendant to pay a civil penalty of up to $55,808 per day for each violation of the Coast Guard's pollution control regulations promulgated under CWA Section 311(j), 33 U.S.C. § 1321(j), as authorized under CWA Section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C);

C. Enjoin Defendants from further illegal oil discharges and order Defendants to perform other appropriate injunctive relief to prevent future oil discharges and redress violations of regulations that pose a threat of future oil discharges;

D. Order Defendants to take all steps necessary to redress or mitigate the impacts of their violations; and

E. Award such other and further relief as the Court may deem just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

SUSAN M. AKERS
Deputy Section Chief
U.S. Department of Justice
Environmental Enforcement Section

***/s/ Addie Fiske***
CATHERINE ADAMS FISKE
Senior Counsel (Bar No. 555967)
U.S. Department of Justice
Environment and Natural Resource Division
Environmental Enforcement Section
Boston, MA 02110
Phone: (617) 748-3399
addie.fiske@usdoj.gov

JOSHUA S. LEVY
Acting United States Attorney
District of Massachusetts

HILLARY HARNETT
Assistant U.S. Attorney
Office of the U.S. Attorney
District of Massachusetts
John Joseph Moakley Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02110
Phone: (617) 748-3252

OF COUNSEL:

LYDIA J. TEAL
Lieutenant, United States Coast Guard
Office of the Judge Advocate General
Claims and Litigation
2703 Martin Luther King Jr. Ave SE, Stop 7213
Washington, D.C. 20593-7213