**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**AMELIA JOYCE INC.,**<br>**WILLIAM E. MULLIS, and**<br>**DEAN STRICKLER,**<br><br>**Defendants.** | **Civil Action No. 1:24-cv-11562-RGS** |

# CONSENT DECREE

# TABLE OF CONTENTS


**I.** JURISDICTION AND VENUE ........ 3
**II.** APPLICABILITY ........ 3
**III.** DEFINITIONS ........ 5
**IV.** CIVIL PENALTY ........ 7
**V.** COMPLIANCE REQUIREMENTS ........ 9
**VI.** REPORTING REQUIREMENTS ........ 12
**VII.** STIPULATED PENALTIES ........ 13
**VIII.** FORCE MAJEURE ........ 16
**IX.** DISPUTE RESOLUTION ........ 18
**X.** EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ........ 21
**XI.** COSTS ........ 23
**XII.** NOTICES ........ 23
**XIII.** EFFECTIVE DATE ........ 25
**XIV.** RETENTION OF JURISDICTION ........ 25
**XV.** MODIFICATION ........ 25
**XVI.** TERMINATION ........ 26
**XVII.** PUBLIC PARTICIPATION ........ 27
**XVIII.** SIGNATORIES ........ 28
**XIX.** INTEGRATION ........ 28
**XX.** FINAL JUDGMENT ........ 28
**XXI.** 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION ........ 28
**XXII.** APPENDICES ........ 29

APPENDIX A: Oil Record Book Page Format

APPENDIX B: Marine Safety Information Bulletin Number 03-18

Plaintiff, the United States of America, on behalf of the United States Coast Guard ("Coast Guard" or "USCG"), filed a Complaint in this action on June 17, 2024 against Defendants Amelia Joyce Inc., William E. Mullis, and Dean Strickler (collectively, "Defendants"). The Complaint alleges that the Defendants discharged oil, including oily bilge water, from the U.S.-flagged commercial fishing vessel *Amelia Joyce,* USCG Official Number 919973 into waters of the United States, including the Acushnet River at Fairhaven Harbor, in violation of Section 311(b)(3) of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1321(b)(3), and that the Defendants violated Coast Guard oil pollution control regulations found at 33 C.F.R. Part 155, including 33 C.F.R. § 155.420(a), by failing to equip the vessel with required pollution control equipment. Docket No. 1.

Defendants do not admit liability arising out of the occurrences or violations alleged in the Complaint.

To date, the parties have completed discovery and filed cross-motions for partial summary judgment and responses. Docket Nos. 25, 27-28, and 37.

33 C.F.R. § 155.420(a) states that no person may operate an oceangoing ship of 100 gross tons and above but less than 400 gross tons that has a machinery space unless the vessel has the pumping, piping, outlet, and stop valve equipment specified therein.

William E. Mullis owns Amelia Joyce Inc. Amelia Joyce Inc. owns or has owned the vessel with Official Number ("O.N.") 919973 (under the name *Amelia Joyce*) without having the equipment specified in 33 C.F.R. § 155.420(a).

William E. Mullis also owns four (4) other corporations which each owns or has owned one vessel in the size class that is subject to 33 C.F.R. § 155.420(a) without having the equipment specified in 33 C.F.R. § 155.420(a). These corporations are: (a) Laura Mae Inc.

which owns or has owned the vessel with O.N. 941588 (under the name *Laura Mae*), (b) Chincoteague Bay Seafood Inc. which owns or has owned the vessel with O.N. 1112054 (under the name *Miss Crockett*), (c) Gloucester Seafood of VA Inc. which owns or has owned the vessel with O.N. 612888 (under the name *Virginia Queen*), and (d) Virginia Wave Inc. which owns or has owned the vessel with O.N. 692922 (under the name *Virginia Wave*).

On February 8, 2026, on behalf of these corporations, Defendant William E. Mullis negotiated and signed a Purchase and Sales Agreement for the sale of each of these vessels to the following corporate buyers: (1) the vessel with O.N. 919973 to be purchased by RMFC4 LLC, (2) the vessel with O.N. 941588 to be purchased by RMFC8 LLC, (3) the vessel with O.N. 1112054 to be purchased by RMFC3 LLC, (4) the vessel with O.N. 612888 to be purchased by RMFC7 LLC, and (5) the vessel with O.N. 692922 to be purchased by RMFC6 LLC.

To provide that each of the five (5) vessels can be operated in compliance with 33 C.F.R. § 155.420(a), the Defendants Amelia Joyce Inc. and William E. Mullis and the purchasing corporations RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC have agreed to install the equipment specified in 33 C.F.R. § 420(a) on each of the vessels and to implement ancillary relief as set forth in this decree.

The United States, the Defendants, and RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC (collectively, the "Parties") recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation between the Parties on the claims addressed in the Complaint, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), (n), and over the Parties. This Court has jurisdiction over RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC and the obligations of those companies in this Consent Decree pursuant to the All Writs Act, 28 U.S.C. § 11651, and Fed. R. Civ. Proc. 19(a). Venue lies in this district pursuant to Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), (n), and 28 U.S.C. §§ 1391 and 1395(a). For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants and consent to venue in this judicial district. For the purposes of this Decree, or any action to enforce this Decree, RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC each consent to the court's exercise of subject matter and personal jurisdiction and the Court's jurisdiction over this Decree, and each consents to venue for purposes of enforcing the individual obligations that apply to each of them, respectively, under the Consent Decree.

2. For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Section 311(b) and (e) of the CWA, 33 U.S.C. § 1321(b) and (e).

## II. APPLICABILITY

3. The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendants and RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC and their successors, assigns, or other entities or persons otherwise bound by law. Upon the closing of sale to RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and

RMFC6 LLC, then RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC will be deemed joined as defendants with the original Defendants for purposes of Fed. R. Civ. P. 25(c).

4. With respect to any transfer of ownership or operation of any of the Vessels to any entities other than RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC (who are signatories to the Decree), no transfer of ownership or operation of any of the Vessels shall relieve Defendants of their obligation to ensure that the requirements of the Consent Decree are implemented or relieve any of RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC of its obligation to ensure that the requirements of the Consent Decree that are applicable to the vessel owned by that corporation are implemented, unless (1) the transferee agrees to undertake the obligations required by this Decree of the transferring Party and agrees to be substituted for the transferring Party as a Party under the Decree and thus be bound by the terms thereof in regard to the transferred vessel, (2) the United States consents to relieve the transferring Party of its obligations, and (3) the Court approves a joint motion from the United States, the transferring Party, and the transferee requesting that the Court approve a modification substituting the transferee as the Party responsible for complying with the applicable terms and conditions of the Consent Decree in regard to the transferred vessel. At least thirty (30) days prior to such transfer, the transferring Party shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the Coast Guard and the United States Department of Justice, in accordance with Section XII (Notices). Any attempt to transfer ownership or operation of any of the Vessels without complying with this Paragraph constitutes a violation of this Decree.

5. Defendants and RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC shall provide notice of this Consent Decree to each officer, employee, contractor, and subcontractor of the respective entity, as applicable, whose duties might reasonably include compliance with any provision of this Decree, including the captains and crew of any of the Vessels, and any contractor or subcontractor performing any work required under this Consent Decree. Defendants and RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6. In any action to enforce this Consent Decree, Defendants and RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC shall not raise as a defense the failure by any of its officers, directors, employees, agents, contractors, subcontractors, or any person representing Defendants to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

7. Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

"Closing Date" means the date on which the bill of sale for the vessel is filed with the Coast Guard pursuant to 46 U.S.C. § 31321.

"Coast Guard" means the United States Coast Guard and any of its successor departments or agencies;

"Complaint" means the complaint filed by the United States in this action;

"Compliance Defendants" means Amelia Joyce Inc. and William E. Mullis.

"Consent Decree" or "Decree" means this Decree;

"Date of Lodging" "or date of lodging" means the date the consent decree is lodged with the Court under Paragraph 69 of the decree prior to publication of a notice in the Federal Register of an opportunity for public notice and comment on the decree;

"Day" or "day" means a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

"Defendants" means Amelia Joyce Inc., William E. Mullis, and Dean Strickler;

"Effective Date" shall have the definition provided in Section XIII;

"NAMS" means the National Association of Marine Surveyors;

"OCMI" shall mean the officer in charge of marine inspection;

"Official Number" or "O.N." refers to the U.S.C.G. Official Number assigned to a vessel;

"Oil Record Book" means the book referenced in 33 C.F.R. § 151.25, an official form printed by the government, form CG-4602A;

"Paragraph" means a portion of this Decree identified by an Arabic numeral;

"Parties" means the United States, the Defendants, and RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC;

"Responsible Party" means as follows:

(a) for the Vessel with O.N. 919973, the "Responsible Party" (1) means the Compliance Defendants prior to the Closing Date for the transfer of the vessel to RMFC4 LLC and (2) on and after that Closing Date, means RMFC4 LLC;

(b) for the Vessel with O.N. 941588, the "Responsible Party" (1) means the Compliance Defendants prior to the Closing Date for the transfer of the vessel to RMFC8 LLC and (2) on and after that Closing Date, means RMFC8 LLC;

(c) for the Vessel with O.N. 1112054, the "Responsible Party" (1) means the Compliance Defendants prior to the Closing Date for the transfer of the vessel to RMFC3 LLC and (2) on and after that Closing Date, means RMFC3 LLC;

(d) for the Vessel with O.N. 612888, the "Responsible Party" (1) means the Compliance Defendants prior to the Closing Date for the transfer of the vessel to RMFC7 LLC and (2) on and after that Closing Date, means RMFC7 LLC; and

(e) for the Vessel with O.N. 692922, the "Responsible Party" (1) means the Compliance Defendants prior to the Closing Date for the transfer of the vessel to RMFC6 LLC and (2) on and after that Closing Date, means RMFC6 LLC;

"SAMS" means the Society of Accredited Marine Surveyors;

"Section" means a portion of this Decree identified by a Roman numeral;

"United States" means the United States of America, acting on behalf of the Coast Guard;

"Vessels" means (1) the vessel with O.N. 919973, (2) the vessel with O.N. 941588, (3) the vessel with O.N. 1112054, (4) the vessel with O.N. 612888, and (5) the vessel with O.N. 692922. "Vessel" means an individual one of these vessels for which the Responsible Party is defined above.

## IV. CIVIL PENALTY

8. Within thirty (30) days after the Effective Date, Defendant Amelia Joyce Inc. shall pay $200,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

9. Defendant Amelia Joyce Inc. shall pay the civil penalty due, together with interest, by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with written instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the U.S. Attorney's Office for the District of Massachusetts after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant Amelia Joyce Inc. shall use to identify

the payment of the civil penalty and any Responsible Party shall use to identify all stipulated penalty payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to the individuals identified below on behalf of Defendant Amelia Joyce Inc. and Responsible Parties:

For Defendants Amelia Joyce Inc. and William E. Mullis

c/o George M. Chalos, Esq.
Chalos & Co, P.C.
55 Hamilton Avenue
Oyster Bay, New York 11711
gmc@chaloslaw.com

For RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC

c/o John A. Markey, Jr., Esq.
50 Homers Wharf
New Bedford, MA 02740
jmarkey@msmw-law.com

Defendant Amelia Joyce Inc. and Responsible Parties may change the individual(s) to receive payment instructions on their behalf by providing written notice of such change to the United States and EPA in accordance with Section XII (Notices).

10. At the time of payment, Defendant Amelia Joyce Inc. or any Responsible Party liable for the payment shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalties owed (or, if applicable, stipulated penalties), pursuant to the Consent Decree in this case, and shall reference the Civil Action Number assigned to this case (Civ. No. 1:24-cv-11562-RGS) and DOJ Number 90-5-1-1-12267, to the United States in accordance with Section XII of this Decree (Notices) and to:

Thomas H. Van Horn
National Pollution Funds Center
US Coast Guard Mailstop 7605
2701 Martin Luther King Jr. Avenue, SE
Washington, DC 20593-7605
Thomas.H.Vanhorn@uscg.mil

Brian Judge
Chief, Office of Claims and Litigation CG-LCL
United States Coast Guard
2703 Martin Luther King Jr. Avenue, SE
Washington, DC 20593-7213
Brian.Judge@uscg.mil

At the time of payment of the civil penalty, Defendant Amelia Joyce Inc. shall also send a copy of the transmittal letter for the civil penalty payment documentation to Attorney John A. Markey, Jr., at jmarkey@msmw-law.com.

11. No Defendant or Responsible Party shall deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its/his federal income tax.

## V. COMPLIANCE REQUIREMENTS

12. The Responsible Party for the Vessel with O.N. 919973 (named or previously named the *Amelia Joyce*) shall maintain an Oil Record Book subject to Coast Guard Inspection, for three (3) years following the Effective Date, in which entries are recorded concerning machinery space operations on that Vessel of the types specified in 33 C.F.R. § 151.25(d): (1) ballasting or cleaning of fuel oil tanks; (2) discharge of ballast containing an oily mixture or cleaning water from fuel oil tanks; (3) disposal of oil residue; (4) discharge overboard or disposal otherwise of bilge water that has accumulated in machinery spaces; (5) bunkering of fuel or bulk lubricating oil; and (6) any discharge relating to failure of oil filtering equipment. "Discharge overboard or disposal otherwise of bilge water that has accumulated in machinery spaces"

includes without limitation discharges or transfers of "oily bilge water" as defined in 33 C.F.R. § 151.05 or other oily mixtures or other liquids from the engine room bilge to reception facilities and, if any, discharges of such liquids overboard. Each record entry shall include the date, time, type of substance involved (e.g., oil or oily bilge water), activity involved, volume handled, cost of disposal, and reception facility name, address, owner, and operator. In the event of any overboard discharge, the record entry shall also include the location of the discharge, the circumstances of the discharge, and the name of the person in charge. A copy of a page format consistent with the Oil Record Book and this Paragraph 12 ("Oil Record Book Page Format") is attached as Appendix A.

13. The Responsible Party for the Vessel with O.N. 919973 (named or previously named the *Amelia Joyce*) shall obtain receipts for all transfers or discharges of bilge water, oil, and oil wastes to any shore reception facility from that Vessel and retain such receipts on board for three (3) years following the Effective Date and make the receipts available for review at any time upon request of the Coast Guard.

14. The Responsible Party for each Vessel shall provide instruction and training to every captain and crew member of that Vessel concerning the requirements of Marine Safety Information Bulletin (MSIB) Number 03-18 (copy attached as Appendix B), including the prohibition on discharges of oil or other petroleum products, including oily bilge water and any other oily mixtures, and the retention on board requirement, prior to the commencement of each fishing voyage or other voyage of the vessel. For purposes of the foregoing training requirement, "other voyage" does not include a trip of less than seven (7) nautical miles. Training records shall be retained by the Responsible Party for each Vessel for three (3) years following the Effective Date and made available for review at any time upon request by the

Coast Guard. Copies of training records shall be provided to the local Officer in Charge, Marine Inspection ("OCMI") on an annual basis.

15. For the Vessel with O.N. 919973 (named or previously named the *Amelia Joyce*), the Responsible Party shall install shipboard pumping, fixed piping, outlet, and other equipment that meets the requirements of 33 C.F.R. § 155.420(a) to enable the transfer of bilge mixtures from the engine room bilge and any other machinery space bilge to the weather deck in accordance therewith (the "Equipment"). The Equipment for that vessel shall be designed by a naval architect who is a licensed professional engineer and installed and tested to the satisfaction of a marine surveyor who is a NAMS certified marine surveyor or a SAMS accredited marine surveyor. The Responsible Party shall arrange for the NAMS or SAMS marine surveyor to provide an attestation to the satisfactory installation and testing of the piping and other components of the Equipment, along with a copy of the as-built drawings signed and stamped by a licensed professional engineer, to the local OCMI. The installation shall be completed on the Vessel with O.N. 919973 by June 30, 2026.

16. For each of the other Vessels besides the Vessel with O.N. 919973, the Responsible Party for that Vessel shall also install the Equipment. The Equipment for each such Vessel shall be designed by a naval architect who is a licensed professional engineer and installed and tested to the satisfaction of a marine surveyor who is a NAMS certified marine surveyor or a SAMS accredited marine surveyor. The Responsible Party for each such Vessel shall arrange for the NAMS or SAMS marine surveyor to provide an attestation to the satisfactory installation and testing of the piping and other components of the Equipment, along with a copy of the as-built drawings signed and stamped by a licensed professional engineer, to

the local OCMI. The installation shall be completed on each of the other Vessels besides the Vessel with O.N. 919973 by August 31, 2026.

## VI. REPORTING REQUIREMENTS

17. By July 31, 2026, the Responsible Party for the Vessel with O.N. 919973 (named or previously named the *Amelia Joyce*) shall submit a report to the Coast Guard documenting and certifying the completion of the requirements of Paragraph 15 of the Decree.

18. By September 30, 2026, the Responsible Party for each of the Vessels other than the Vessel with O.N. 919973 shall submit a report to the Coast Guard documenting and certifying the completion of the requirements of Paragraph 16 of the Decree.

19. For each of three (3) 12-month periods after the Effective Date of this Decree, the Responsible Party for the Vessel with O.N. 919973 (named or previously named the *Amelia Joyce*) shall submit an annual report for that Vessel summarizing and certifying the Responsible Party's compliance with the requirements of Paragraphs 12, 13, and 14 for the previous 12-month period and attaching a copy of the Oil Record Book pages that cover the previous 12-month period and copies of the training records. For each of the three (3) 12-month periods after the Effective Date of this Decree, the Responsible Party for each of the Vessels other than the Vessel with O.N. 919973 shall submit an annual report for its Vessel summarizing and certifying the Responsible Party's compliance with the requirements of Paragraph 14 for the previous 12-month period and attaching copies of the training records. The first, second, and third annual reports shall be submitted within thirty (30) days after the first, second, and third anniversaries of the Effective Date, respectively.

20. Each report submitted under this Section shall be signed by the submitting party, or an authorized representative thereof, and include the following certification:

> I certify under penalty of perjury that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

21. The reporting requirements of this Consent Decree do not relieve Defendants, any other Responsible Party, or any captain, crew member, or other operator of any vessel, of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

22. Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII. STIPULATED PENALTIES

23. Defendant Amelia Joyce Inc. shall be liable for stipulated penalties to the United States for violations of Section IV of this Consent Decree as specified in Paragraph 24 below. The entities that form the Responsible Party for each Vessel shall be liable for stipulated penalties to the United States for violations with respect to any of the obligations applicable to the Responsible Party for that Vessel of Paragraphs 12 to 20 of this Consent Decree as specified in Paragraph 25 below, unless excused under Section VIII (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

24. Late Payment of Civil Penalty. If Defendant Amelia Joyce Inc. fails to pay the civil penalty, including interest thereon, required to be paid under Section IV (Civil Penalty) when due, Defendant Amelia Joyce Inc. shall pay a stipulated penalty of $2,000 per day for each day that the payment is late. The provisions of Section IX (Dispute Resolution) do not apply to late payment of the civil penalty, including interest.

25. The following stipulated penalties shall accrue per violation per day for each violation of the requirements in Section V (Compliance Requirements) and Section VI (Reporting Requirements):

| Period of Noncompliance | Penalty Per Violation Per Day |
|---|---|
| 1st to 30th day: | $1,000 |
| 31st to 60th day: | $2,000 |
| More than 60 days: | $3,000 |

26. Stipulated penalties under this Section begin to accrue on the day after the performance is due or on the day a violation occurs, whichever is applicable, and continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties accrue simultaneously for separate violations of this Consent Decree.

27. Defendant Amelia Joyce Inc. shall pay any stipulated penalty under Paragraphs 23 and 24 and the Responsible Party shall pay any stipulated penalty under Paragraphs 23 and 25 within thirty (30) days of receiving the United States' written demand.

28. The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

29. Stipulated penalties continue to accrue as provided in Paragraph 26, during any Dispute Resolution, but need not be paid until the resolution of the dispute as follows:

a. If the dispute is resolved by agreement or by a decision of the United States that is not appealed to the Court, the Responsible Party shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) days of the effective date of the agreement or the receipt of the United States' decision.

b. If the dispute is appealed to the Court and the United States prevails in whole or in part, the Responsible Party shall pay all accrued penalties determined by the Court to be owing, together with interest, within thirty (30) days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c. If any Party appeals the District Court's decision, the Responsible Party shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) days of receiving the final appellate court decision.

30. Payment of stipulated penalties shall be made in the manner set forth in Paragraph 9 with the confirmation notice required by Paragraph 10, and the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

31. If any Responsible Party fails to pay stipulated penalties according to the terms of this Consent Decree, that Responsible Party shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for a Responsible Party's failure to pay any stipulated penalties.

32. The payment of penalties and interest, if any, shall not alter in any way any Responsible Party's obligation to complete the performance of the requirements of this Consent Decree.

33. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section X (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for any Defendant's or any other Responsible Party's violation of this Decree or applicable law, including but not limited to an action against the Defendant or any other Responsible Party for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree for the same violation.

## VIII. FORCE MAJEURE

34. "Force majeure," for purposes of this Consent Decree, means any event arising from causes beyond the control of the Responsible Party, of any entity controlled by the Responsible Party, or of the Responsible Party's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite the Responsible Party's best efforts to fulfill the obligation. Given the need to protect public health and welfare and the environment, the requirement that each Responsible Party exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure and best efforts to address the effects of any potential force majeure (a) as it is occurring, and (b) following the potential force majeure, such that any delay or non-performance and any adverse effects of the delay or non-performance are minimized to the greatest extent possible. "Force majeure" does not include any Defendant's or other Responsible Party's financial inability to perform any obligation applicable to it under this Consent Decree.

35. If any event occurs for which the Responsible Party will or may claim a force majeure, the Responsible Party shall provide notice by phone or by email to the Coast Guard, including to Commander Mason Wilcox, #401-952-9264, mason.c.wilcox@uscg.mil. The deadline for the notice is twenty-four (24) hours after the Responsible Party first knew or should have known that the event would likely delay or prevent performance. The Responsible Party shall be deemed to know of any circumstance of which any contractor of, subcontractor of, or entity controlled by the Responsible Party knew or should have known.

36. If the Responsible Party seeks to assert a claim of force majeure concerning the event, the Responsible Party shall submit, within seven (7) days after the notice under Paragraph 35, a further notice to the Coast Guard that includes (a) an explanation and description of the event and its effect on the Responsible Party's completion of the requirements of the Consent Decree; (b) a description and schedule of all actions taken or to be taken to prevent or minimize the delay and/or other adverse effects of the event; (c) if applicable, the proposed extension of time for the Responsible Party to complete the requirements of the Consent Decree; (d) the Responsible Party's rationale for attributing such delay to a force majeure; (e) a statement as to whether, in the opinion of the Responsible Party, such event may cause or contribute to an endangerment to public health or welfare or the environment; and (f) all available proof supporting any claim that the delay was attributable to a force majeure.

37. Failure to submit a timely or complete notice or claim under Paragraph 35 or 36 regarding an event precludes the Responsible Party from asserting a claim of force majeure regarding that event, provided, however, that the Coast Guard may, in its unreviewable discretion, excuse such failure if it is able to assess to its satisfaction whether the event is a force

majeure, and whether the entities that form the Responsible Party have exercised their best efforts under Paragraph 34.

38. After receipt of any claim of force majeure, the Coast Guard will notify the Responsible Party of its determination whether the Responsible Party is entitled to relief under Paragraph 34, and, if so, the excuse of, or the extension of time for, performance of the obligations affected by the force majeure. Any such excuse or extension does not, of itself, excuse or extend the time for performance of any other obligation.

39. If the Responsible Party elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), the Responsible Party shall do so no later than fifteen (15) days after receipt of the Coast Guard's notice. In any such proceeding, the Responsible Party bears the burden of proving that the Responsible Party is entitled to relief under Paragraph 34, that the Responsible Party's proposed excuse or extension was or will be warranted under the circumstances, and that the Responsible Party complied with the requirements of Paragraphs 34 - 36. If the Responsible Party carries this burden, the delay or non-performance at issue shall be deemed not to be a violation by the Responsible Party of the affected obligation of this Consent Decree identified to the Coast Guard and the Court.

## IX. DISPUTE RESOLUTION

40. Unless otherwise provided in this Consent Decree, the Responsible Party shall use the dispute resolution procedures of this Section to resolve any dispute arising under or with respect to this Consent Decree ("Covered Dispute"). The Responsible Party's failure to seek resolution of a dispute under this Section concerning an issue of which it had notice and an opportunity to dispute under this Section prior to an action by the United States to enforce any obligation of the Responsible Party arising under this Decree precludes the Responsible Party

from raising any such issue as a defense to any such enforcement action. Further, any such enforcement action by the United States is not a Covered Dispute.

41. Invoking Dispute Resolution and Informal Dispute Resolution. To invoke dispute resolution for a Covered Matter, the Responsible Party shall send DOJ and the Coast Guard a written Notice of Dispute that clearly states the matter in dispute. The Parties shall first negotiate informally concerning the Covered Dispute for a period of up to twenty (20) days from the date of receipt of the Notice of Dispute, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless the Responsible Party initiates formal dispute resolution under Paragraph 42.

42. Formal Dispute Resolution. The Responsible Party may initiate formal dispute resolution by sending DOJ and the Coast Guard, within twenty (20) days after the conclusion of informal dispute resolution under Paragraph 41, a written Statement of Position regarding the matter in dispute. The Statement of Position must include, but need not be limited to, any factual data, analysis, or opinion supporting the Responsible Party's position and any supporting documentation relied upon by the Responsible Party.

43. The United States' responsive Statement of Position is due within forty-five (45) days of receipt of the Responsible Party's Statement of Position. The United States' Statement of Position must include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on the Responsible Party, unless the Responsible Party files a motion for judicial review of the dispute in accordance with Paragraph 44.

44. Judicial Dispute Resolution. The Responsible Party may seek judicial review of the Covered Dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute. The Responsible Party (a) shall file the motion within ten (10) days of receipt of the United States' Statement of Position pursuant to Paragraph 43; (b) may not raise any issue not raised in informal dispute resolution pursuant to Paragraph 41, unless the United States raises a new issue of law or fact in its Statement of Position; (c) shall contain a written statement of the Responsible Party's position on the matter in the Covered Dispute, including any supporting factual data, analysis, opinion, or documentation; and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

45. The United States shall respond to the Responsible Party's motion within the time period allowed by the Local Rules of this Court. The Responsible Party may file a reply, to the extent permitted by the Local Rules.

46. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 44, the Responsible Party shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

47. The invocation of dispute resolution procedures under this Section does not, by itself, extend, postpone, or affect in any way any obligation of the Responsible Party under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 29. If the

Responsible Party does not prevail on the disputed issue, stipulated penalties will be assessed and must be paid as provided in Section VII (Stipulated Penalties).

## X. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

48. This Consent Decree resolves only the civil claims of the United States for the violations alleged in the Complaint through the date of lodging of this Decree.

49. The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.

50. This Consent Decree does not limit the rights of the United States to obtain penalties, injunctive relief, costs, damages, or other appropriate relief under the CWA or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly provided in Paragraph 48. The United States further reserves all legal and equitable remedies to address any conditions that present or may present an imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendants' or other Responsible Parties' vessels or operations, whether related to the violations addressed in this Consent Decree or otherwise.

51. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, costs, damages, or other appropriate relief relating to Defendants' or other Responsible Parties' violations, Defendants and other Responsible Parties shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, claim preclusion (res judicata), issue preclusion (collateral estoppel), claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims

that have been specifically resolved pursuant to Paragraph 48 (i.e., the civil claims of the United States for the violations alleged in the Complaint through the date of lodging of this Decree).

52. This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendants and other Responsible Parties are responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendants' or other Responsible Parties' compliance with this Consent Decree is not a defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants' or other Responsible Parties' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA or with any other provision of federal, State, or local laws, regulations, or permits.

53. This Consent Decree does not limit or affect the rights of Defendants or other Responsible Parties or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants or other Responsible Parties, except as otherwise provided by law.

54. This Consent Decree does not create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

55. Defendants hereby covenant not to sue and agree not to assert any claims against the United States related to the allegations in the Complaint pursuant to the CWA, OPA, or any other state or federal law or regulation for acts or omissions through the date of lodging of the Consent Decree. Defendants further covenant not to sue and agree not to assert any direct or

indirect claim for reimbursement from the Oil Spill Liability Trust Fund or pursuant to any other provision of law.

## XI. COSTS

56. The Parties shall bear their own costs of this civil action, including attorneys' fees, except that the United States is entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendants or other Responsible Parties.

## XII. NOTICES

57. Unless otherwise specified in this Consent Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they must be made in writing and sent by mail or email, addressed as follows:

To the United States:

To the U.S. Department of Justice (DOJ) (email preferred):

EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
eescdcopy.enrd@usdoj.gov
Re: DJ # 90-5-1-1-12267

To the Coast Guard:

Chief
Office of Claims and Litigation CG-LCL
United States Coast Guard
2703 Martin Luther King Jr. Avenue, SE
Washington, DC 20593-7213
Brian.Judge@uscg.mil

Deputy Staff Judge Advocate
United States Coast Guard
District Northeast
408 Atlantic Avenue
Boston, MA 02110
Miles.K.Young@uscg.mil

To Defendants:

To Amelia Joyce Inc.:

| | |
|---|---|
| Name: | George M. Chalos, Esq. |
| Title: | Attorney for Amelia Joyce Inc. |
| Organization: | Chalos & Co, P.C. |
| Street Address: | 55 Hamilton Avenue<br>Oyster Bay, New York 11771 |
| Email Address: | gmc@chaloslaw.com |
| Phone: | (516) 714-4300 |

To William E. Mullis:

| | |
|---|---|
| Name: | George M. Chalos, Esq. |
| Title: | Attorney for William E. Mullis |
| Organization: | Chalos & Co, P.C. |
| Street Address: | 55 Hamilton Avenue<br>Oyster Bay, New York 11771 |
| Email Address: | gmc@chaloslaw.com |
| Phone: | (516) 714-4300 |

To Dean Strickler:

| | |
|---|---|
| Name: | George M. Chalos, Esq. |
| Title: | Attorney for Dean Strickler |
| Organization: | Chalos & Co, P.C. |
| Street Address: | 55 Hamilton Avenue<br>Oyster Bay, New York 11771 |
| Email Address: | gmc@chaloslaw.com |
| Phone: | (516) 714-4300 |

To RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC:

| | |
|---|---|
| Name: | c/o John A. Markey, Jr., Esq. |
| Title: | Attorney |
| Organization: | Markey & Walsh |
| Street Address: | 50 Homers Wharf<br>New Bedford, MA 02740 |
| Email Address: | jmarkey@msmw-law.com |
| Phone: | (508) 993-9711 |

58. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

59. Notices submitted pursuant to this Section are deemed submitted upon mailing or, to the extent applicable, transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIII. EFFECTIVE DATE

60. The Effective Date of this Consent Decree is the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XIV. RETENTION OF JURISDICTION

61. The Court retains jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Section IX (Dispute Resolution) and XV (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XV. MODIFICATION

62. The terms of this Consent Decree, including attached Appendix A, may be modified by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it is effective only upon approval by the Court.

63. If any Party seeks a modification to this Consent Decree, it shall send a written notice to the other Parties in accordance with Section XII (Notices) setting forth the requested changes and the reasons therefor. The Parties shall negotiate informally concerning the modification for a period of up to thirty (30) days from the date of receipt of the notice, unless that period is modified by written agreement. If at the end of the period of informal negotiations the Parties are not in agreement, the Party seeking the modification retains any rights it may have to seek modification from the Court pursuant to Federal Rule of Civil Procedure 60(b).

## XVI. TERMINATION

64. After Defendant Amelia Joyce Inc. has paid the civil penalty, the Responsible Parties have completed the requirements of Section V (Compliance Requirements) and Section VI (Reporting Requirements), the Responsible Parties have maintained compliance with this Consent Decree for a period of three (3) years after the Effective Date, and the Responsible Parties have paid accrued stipulated penalties (if any) as required by this Consent Decree, the Responsible Parties may send to the Coast Guard and DOJ a Request for Termination, stating that all of those requirements for termination have been satisfied, together with all necessary supporting documentation.

65. Following receipt by the United States of the Responsible Parties' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether the requirements for termination of this Consent Decree have been satisfactorily complied with. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

66. If the United States does not agree that the Decree may be terminated, the Responsible Parties may invoke Dispute Resolution under Section IX. However, the Responsible Parties shall not seek Dispute Resolution of any dispute regarding termination, under Section IX, until sixty (60) days after service of their Request for Termination.

67. If the Responsible Parties fail to submit a Notice of Termination or fail to sign a joint stipulation terminating the Decree, and the United States has sufficient information to determine that the Responsible Parties have met the requirements for termination under Paragraph 64, the United States, after notice to the Responsible Parties, may file a motion to terminate the Decree.

68. If the United States does not have sufficient information to determine whether the Responsible Parties have met the requirements for termination under Paragraph 64, the United States may request additional information from the Responsible Parties, which the Responsible Parties shall provide within thirty (30) days of receiving the United States' request.

## XVII. PUBLIC PARTICIPATION

69. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. The Defendants and RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified

Defendants and RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC in writing that it no longer supports entry of the Decree.

## XVIII. SIGNATORIES

70. Each undersigned representative of Defendants and of RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC and the Principal Deputy Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice identified on the DOJ signature page below, certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

71. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

## XIX. INTEGRATION

72. This Consent Decree constitutes the entire agreement among the Parties regarding the subject matter of the Decree and supersedes all prior representations, agreements and understandings, whether oral or written, concerning the subject matter of the Decree herein.

## XX. FINAL JUDGMENT

73. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the Defendants, and RMFC4 LLC, RMFC8 LLC, RMFC3 LLC, RMFC7 LLC, and RMFC6 LLC.

## XXI. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

74. For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of Section II (Applicability), Paragraph 5; Section V (Compliance Requirements),

Paragraphs 12-16; and Section VI (Reporting Requirements), Paragraphs 17-20, is restitution, remediation, or required to come into compliance with law.

## XXII. APPENDICES

75. The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the Oil Record Book Page Format; and

"Appendix B" is the Marine Safety Information Bulletin Number 03-18.

Dated and entered this ________ day of __________________, 2026.

______________________________
UNITED STATES DISTRICT JUDGE

**Signature Page for Consent Decree in *United States v. Amelia Joyce Inc. et al.***

**FOR PLAINTIFF THE UNITED STATES OF AMERICA:**

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

CATHERINE FISKE
Digitally signed by CATHERINE FISKE
Date: 2026.05.05 12:01:50 -04'00'

________________
Date

CATHERINE ADAMS FISKE (Bar No. 555967)
ELIZABETH YU
Senior Counsel
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
Boston, MA 02110
Phone: (617) 947-9157
addie.fiske@usdoj.gov

LEAH B. FOLEY
United States Attorney
District of Massachusetts

HILLARY HARNETT
Assistant United States Attorney
Office of the United States Attorney
District of Massachusetts
John Joseph Moakley Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02110

**Signature Page for Consent Decree in *United States v. Amelia Joyce Inc. et al.***

**FOR PLAINTIFF THE UNITED STATES OF AMERICA (continued):**

14APR2026
Date

BRIAN JUDGE
Chief, Office of Claims and Litigation
United States Coast Guard
Coast Guard Headquarters
2703 Martin Luther King Jr. Ave., SE
Washington, DC 20593-7213

14 Apr 2026
Date

CAPT JON TRENT WARNER
Staff Judge Advocate
United States Coast Guard
Northeast Coast Guard District
408 Atlantic Avenue
Boston, MA 02110

**Signature Page for Consent Decree in *United States v. Amelia Joyce Inc. et al.***

**FOR DEFENDANT AMELIA JOYCE INC.:**

4-10-26
Date

William E Mullis
William E. Mullis
President, Amelia Joyce Inc.

**Signature Page for Consent Decree in *United States v. Amelia Joyce Inc. et al.***

**FOR DEFENDANT WILLIAM E. MULLIS:**

4-10-26
Date

William E. Mullis
William E. Mullis

**Signature Page for Consent Decree in *United States v. Amelia Joyce Inc. et al.***

**FOR DEFENDANT DEAN STRICKLER:**

4/10/2026
Date

Dean V Strickler
Dean Strickler

**Signature Page for Consent Decree in *United States v. Amelia Joyce Inc. et al.***

**FOR RMFC4 LLC:**

4/14/26
Date

Name: Frederick A. Miller, Jr.
Title: Manager

**Signature Page for Consent Decree in *United States v. Amelia Joyce Inc. et al.***

**FOR RMFC8 LLC:**

4/14/26
Date

Name: Frederick A. Miller, Jr.
Title: Manager

**Signature Page for Consent Decree in *United States v. Amelia Joyce Inc. et al.***

**FOR RMFC3 LLC:**

4/14/26
Date

Name: Frederick A. Miller, Jr.
Title: Manager

**Signature Page for Consent Decree in *United States v. Amelia Joyce Inc. et al.***

**FOR RMFC7 LLC:**

4/14/26
Date

Name: Frederick A. Miller, Jr.
Title: Manager

**Signature Page for Consent Decree in *United States v. Amelia Joyce Inc. et al.***

**FOR RMFC6 LLC:**

4/14/26
Date

Name: Frederick A. Miller, Jr.
Title: Manager

# Appendix A

## Oil Record Book Page Format

# Oil Record Book Page Format

For Paragraph 12 of Consent Decree in
United States v. Amelia Joyce Inc., et al.

Name of Ship: ______________________________
Official Number: O.N. 919973
Machinery Space Operation

| Date of event[1] | Code (letter) (type of operation)[2] | Item (number)[2] | Record of operations (enter the pertinent information for each line Item) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | I (Additional Operational Procedures and General Remarks)[3] | | Additional Information for the event: |

Signature of Officer in charge of machinery space operation/filling out the form: ____________________
Printed name of Officer in charge of machinery space operation/filling out the form: ____________________
Date of signature: ____________________

Signature of Master of vessel: ____________________
Printed name of Master of vessel: ____________________
Date of signature: ____________________

[1] Use one page per event.
[2] See attached list from pages 10-11 of form CG-4602A (Oil Record Book for Ships), which has letter Codes for machinery space operations of the types specified in 33 C.F.R. § 151.25(d) and which has number Items for each type of operation to be entered, where applicable, on the page.
[3] Include in this block any information specified in Paragraph 12 of the Consent Decree which is not fully covered in the Items entered above on the page. Paragraph 12 states: "Each record entry shall include the date, time, type of substance involved (e.g., oil or oily bilge water), activity involved, volume handled, cost of disposal, and reception facility name, address, owner, and operator. In the event of any overboard discharge, the record entry shall also include the location of the discharge, the circumstances of the discharge, and the name of the person in charge." Also, include any additional remarks.

# LIST OF ITEMS TO BE RECORDED

## PART I - Machinery Space Operations

*(A) BALLASTING OR CLEANING OF OIL FUEL TANKS*

1 Identity of tank(s) ballasted.
2 Whether cleaned since they last contained oil and, if not, type of oil previously carried.
3 Cleaning process:
  .1 position of ship and time at the start and completion of cleaning;
  .2 identify tank(s) in which one or another method has been employed (rinsing through, steaming, cleaning with chemicals; type and quantity of chemicals used, in $m^3$, gals., or bbls);
  .3 identity of tank(s) into which cleaning water was transferred and the quantity in $m^3$, gals., or bbls.
4 Ballasting:
  .1 position of ship and time at start and end of ballasting;
  .2 quantity of ballast if tanks are not cleaned, in $m^3$, gals., or bbls.

*(B) DISCHARGE OF DIRTY BALLAST OR CLEANING WATER FROM OIL FUEL TANKS REFERRED TO UNDER SECTION (A)*

5 Identity of tank(s).
6 position of ship at start of discharge.
7 Position of ship on completion of discharge.
8 Ship's speed(s) during discharge.
9 Method of discharge:
  .1 through 15 ppm equipment;
  .2 to reception facilities.
10 Quantity discharged, in $m^3$, gals., or bbls.

*(C) COLLECTION, TRANSFER AND DISPOSAL OF OIL RESIDUES (SLUDGE AND OTHER OIL RESIDUES)*

11 Collection of oil residues (sludge).
Quantities of oil residues (sludge) retained on board. The quantity should be recorded weekly[1]: (this means that the quantity must be recorded once a week even if the voyage lasts more than one week):
  .1 identity of tank(s)
  .2 capacity of tank(s) in $m^3$, gals., or bbls.
  .3 total quantity of retention in $m^3$, gals., or bbls.
  .4 quantity of residue collected by manual operation in $m^3$, gals., or bbls.
  (Operator initiated manual collections where oil residue (sludge) is transferred into the oil residue (sludge) holding tank(s).)

12 Methods of transfer or disposal of oil residues (sludge).
State quantity of oil residues transferred or disposed of, the tank(s) emptied and the quantity of contents retained in $m^3$, gals., or bbls:
  .1 to reception facilities (identify port);[2]
  .2 to another (other) tank(s) (indicate tank(s) and the total content of tank(s));
  .3 incinerated (indicate total time of operation with time of start and stop);
  .4 other method (state which).

NOTES:
[1] Only those tanks listed in item 3.1 of Forms A and B of the Supplement to the IOPP Certificate used for oil residues (sludge).
[2] The ship's master should obtain from the operator of the reception facilities, which includes barges and tank trucks, a receipt or certificate detailing the quantity of tank washings, dirty ballast, residues or oily mixtures transferred, together with the time and date of the transfer. This receipt or certificate, if attached to the Oil Record Book Part I, may aid the master of the ship in proving that the ship was not involved in an alleged pollution incident. The receipt or certificate should be kept together with the Oil Record Book Part I.

(D) NON-AUTOMATIC STARTING OF DISCHARGE OVERBOARD, TRANSFER OR DISPOSAL OTHERWISE OF BILGE WATER WHICH HAS ACCUMULATED IN MACHINERY SPACES

13 Quantity discharged, transferred or disposed of, in $m^3$, gals., or bbls.[1]
14 Time of discharge, transfer or disposal (start and stop).
15 Method of discharge, transfer, or disposal:
.1 through 15 ppm equipment (state position at start and end);
.2 to reception facilities (identify port);[2]
.3 to slop tank or holding tank or other tank(s) (indicate tank(s); state quantity retained in tank(s), in $m^3$, gals., or bbl).

(E) AUTOMATIC STARTING OF DISCHARGE OVERBOARD, TRANSFER OR DISPOSAL OTHERWISE OF BILGE WATER WHICH HAS ACCUMULATED IN MACHINERY SPACES

16 Time and position of ship at which the system has been put into automatic mode of operation for discharge overboard, through 15 ppm equipment.
17 Time when the system has been put into automatic mode of operation for transfer of bilge water to holding tank (identify tank).
18 Time when the system has been put into manual operation.

(F) CONDITION OF THE OIL FILTERING EQUIPMENT

19 Time of system failure.[3]
20 Time when system has been made operational.
21 Reasons for failure.

*(If a failure does occur then a code 'I' entry should also be made indicating that the overboard valve was sealed shut due to non working Oil Filtering Equipment or Oil Content Meter.)
*(When operation is restored, a code 'I' entry should also be made indicating that the overboard valve was unsealed since the operation of the Oil Filtering Equipment or Oil Content Meter has been restored.)

(G) ACCIDENTAL OR OTHER EXCEPTIONAL DISCHARGES OF OIL

22 Time of occurrence.
23 Place or position of ship at time of occurrence.
24 Approximate quantity and type of oil.
25 Circumstances of discharge or escape, the reasons there for and general remarks.

(H) BUNKERING OF FUEL OR BULK LUBRICATING OIL

26 Bunkering:
.1 Place of bunkering.
.2 Start and stop date and time of bunkering.
.3 Type and quantity of fuel oil and identity of tank(s) (state quantity added, in tons, $m^3$, gals., or bbls., and total content of tank(s)).
.4 Type and quantity of lubricating oil and identity of tank(s) (state quantity added, in tons, $m^3$, gals., or bbls., and total content of tank(s)).

*(I) ADDITIONAL OPERATIONAL PROCEDURES AND GENERAL REMARKS*

NOTES:
[1] In case of discharge or disposal of bilge water from holding tank(s), state identity and capacity of holding tank(s) and quantity retained in holding tank.
[2] The ship's master should obtain from the operator of the reception facilities, which includes barges and tank trucks, a receipt or certificate detailing the quantity of tank washings, dirty ballast, residues or oily mixtures transferred, together with the time and date of the transfer. This receipt or certificate, if attached to the Oil Record Book Part I, may aid the master of the ship in proving that the ship was not involved in an alleged pollution incident. The receipt or certificate should be kept together with the Oil Record Book Part I.
[3] The condition of the oil filtering equipment covers also the alarm and automatic stopping devices, if applicable.

# Appendix B

## Marine Safety Information Bulletin Number 03-18

# Marine Safety Information Bulletin

Commandant
U.S. Coast Guard
Office of Commercial Vessel Compliance
2703 Martin Luther King Jr Ave SE, STOP 7501
Washington, DC 20593-7501
E-Mail: HQS-PF-FLDR-CG-CVC@USCG.MIL

MSIB Number: 03-18
Date: April 12, 2018

## Oily Mixtures ("Oily Bilge Water") Management for Oceangoing Vessels of less than 400 Gross Tons[1]

*Compliance Options - Retain onboard or discharge through an oily-water separator (OWS)*

### Summary

This bulletin summarizes key legal requirements in 33 CFR Part 151, Subpart A and 33 CFR Part 155, Subparts A and B for the proper management and disposal of oily mixtures by oceangoing vessels under 400 gross tons. [2] An "oceangoing ship [or vessel]" – as defined in 33 CFR 151.05 – means any vessel that operates on international voyages, is certified for coastwise service beyond three miles, or operates beyond three nautical miles at any time. Oceangoing vessels falling into this category include – but are not limited to – tugs, ferries, shuttle vessels, commercial fishing vessels, and tour boats.

Oceangoing vessels of less than 400 gross tons must be able to retain all oily mixtures until it can be discharged to a reception facility per 33 CFR 155.350. Alternatively, vessels may carry approved oily-water separator (OWS) equipment to separate oil from the water and discharge the water overboard, provided the effluent contains less than 15 parts per million (ppm) oil and meets other criteria provided in 33 CFR 151.10. The Coast Guard encourages owners, operators, and crews to take responsible measures to manage oily waste such as reducing the generation of oily mixtures and engaging in voyage planning to account for safe retention and lawful disposal.

### Discussion

The regulations discussed in this document have been in effect since 1983. 33 CFR 155.350 requires oceangoing vessels of less than 400 gross tons to either 1) have the capacity to retain all oily mixtures onboard and be equipped to discharge said mixtures to a reception facility or 2) have approved OWS equipment for processing oily mixtures from bilges or fuel oil tank ballast and discharges into the sea according to 33 CFR 151.10.

33 CFR 151.10 regulates the discharge of oily mixtures by all oceangoing vessels. Discharges of oil or oily mixtures are prohibited *unless* the oil content of the effluent is less than 15 ppm, the vessel has in operation OWS equipment, *and* the vessel meets various other requirements depending on its location. Note that discharges may be permissible in emergencies to secure the safety of a vessel or save life at sea per 33 CFR 151.11. Such discharges must be reported to the nearest Captain of the Port or the National Response Center per 33 CFR 151.15.

---

[1] This bulletin provides guidance to the industry, mariners, and the general public. It is not a regulation, is not final agency action, and lacks legally binding effect upon person or entities outside the federal government. This bulletin may be modified or rescinded at the complete discretion of the Coast Guard. It creates no rights or benefits, substantive or procedural, enforceable against the United States, its agencies, or personnel.

[2] The cited regulations use the term "ship" and "ships" which is synonymous with "vessel" and "vessels."

Both 33 CFR 155.350 and 33 CFR 151.10 apply to U.S. vessels (registered under federal law or documented under state law) *wherever located* and to foreign flagged vessels within twelve miles of the U.S. shoreline.[3]

The terms "oily" and "oily mixtures" have a broad meaning under 33 CFR 151.05. The term includes "oily bilge water" which is "water which *may be contaminated* by oil" resulting from leaks or maintenance. Further, "any liquid entering the bilge system" is automatically considered "oily bilge water" per 33 CFR 151.05.

Please note the discharge of oily mixtures from oceangoing vessels overboard via "decanting" is prohibited. "Decanting" or "skimming" are common terms related to pumping bilge water from below any perceived oily film or sheen on the bilge water's surface. This practice is a violation of 33 CFR 151.10 and 33 CFR 155.350 regardless if the discharge creates a sheen on the outside water. However, if the discharge from *any vessel* creates a sheen or violates applicable state water quality standards, the discharge may separately constitute a violation of the Clean Water Act. 33 U.S.C. §§ 1319(c), 1321(b)(6); 40 CFR 110.3.




*Figure 1 – General depiction of unlawful "decanting" or "skimming" where vessel is not operating oily water separator (OWS) equipment.*

Operation of a vessel without pollution prevention equipment required by 33 CFR 155.350 or other regulations may result in civil penalties, judicial civil action, and/or Captain of the Port orders directing remedial action. Also, unlawful discharges of oily mixtures may result in the previous listed actions as well as criminal proceedings pursuant to the Act to Prevent Pollution from Ships and the Clean Water Act.

Therefore, the Coast Guard recommends that vessel owners, operators, and crew take reasonable measures to appropriately manage and dispose of all oily mixtures. Examples of such measures may include:

- Identifying and reducing sources of liquid entering machinery space bilges;
- Ensuring material conditions do not result in water entering machinery spaces from non-machinery spaces (e.g., fish holds) resulting from leaks or free communication; and
- Voyage planning for the safe and lawful maintenance and disposal of oily mixtures.

**Conclusion**

The Coast Guard remains committed to preventing pollution and enforcing our nation's environmental laws to maintain a level-playing field where violators do not gain an unfair advantage through pollution violations. Readers are encouraged to review the cited regulations and other applicable regulations free of charge via the U.S. Government Publishing Office at www.gpo.gov. Please submit any questions specific to this bulletin to HQS-PF-FLDR-CG-CVC@USCG.MIL.

[3] 33 CFR 151.10, however, does not apply to U.S. or Canadian vessels operating exclusively on the Great Lakes, their connected tributary waters, or the internal waters of the United States. *See* 33 CFR 151.09(b).